Thad M. Guyer (OSB 821443)
Stephani L Ayers (*pro hac vice*)
T M Guyer and Ayers & Friends, PC
116 Mistletoe Street
Medford, OR 97501
Tel: (206) 535-2395
Fax: (888) 866-4720
Email: thad@guyerayers.com
stephani@guyerayers.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## MEDFORD DIVISION

**FRED AND LINDA MARTI,**

    Plaintiffs,

    vs.

**US PRO MOVING AND
LOGISTICS LLC,  D UNITED
LOGISTICS MOVING  & STORAGE, INC.,
JOHN DOE** and **JANE ROE,**

    Defendants.

No. ___1:21-cv-471___

**COMPLAINT FOR DAMAGES
(JURY DEMAND)**

Plaintiffs, FRED AND LINDA MARTI, by and through their attorneys, T.M. Guyer and Ayers & Friends, PC, file this Complaint against Defendants US PRO MOVING AND LOGISTICS, LLC, D UNITED LOGISTICS MOVING & STORAGE, INC, JOHN DOE and JANE ROE. This action arises out of the brokering, moving, theft and loss of household goods starting in October 2020 and continuing to the date of this filing. Plaintiffs make their claims under the strict liability provisions of the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706 et seq, a federal private right of action for violations of the U.S. Department of Transportation ("DOT") Federal Motor Carriers Safety Administration's ("FMCSA") regulations

**COMPLAINT** - 1

in 49 CFR Parts 371 and 375,  the Racketeer Influenced and Corrupt Organizations Act (RICO), 18

U.S.C. § 1962 et seq., and non-preempted supplemental state law claims under Oregon,

California and Florida law.  Plaintiffs allege as follows:

## I.    PARTIES

1.        Plaintiffs are U.S. citizens and reside in Desert Hot Springs, California. Said

Plaintiffs' listed address and telephone are:

> Fred and Linda Marti
> 16840 Greenway Ct.
> Desert Hot Springs, CA 92241
> (541) 840-0611

2.        Defendant U.S. Pro Moving and Logistics, LLC ("US Pro") is a corporation

incorporated under the laws of the State of Florida and maintains its principal offices there.

Said Defendant's DOT listed address and telephone are:

> U.S. Pro Moving and Logistics, LLC
> 333 Southern Blvd., Ste. 401
> West Palm Beach, FL 33405
> (561) 461-9504

3.        D United Logistics Moving & Storage, Inc. (" D United" is a corporation

incorporated under the laws of the State of California and maintains its principal offices

there. Said Defendant's DOT listed address and telephone are:

> D United Logistic Moving & Storage, Inc.
> 4872 Topanga Canyon Blvd., Ste. 289
> Woodland Hills, CA 91364
> (888) 851-2056

4.        Each defendant is a U.S. Department of Transportation ("DOT") registered

broker and/or motor carrier engaged in the business of transporting household goods under

the rules and regulations of the DOT Federal Motor Carriers Safety Administration

("FMCSA") in 49 CFR Part 371 or  49 CFR Part 375.

**T M GUYER and AYERS & FRIENDS, PC**
116 Mistletoe Street, Medford, OR 97501
(206) 535-2395

Large

5.      Defendants John Doe and Jane Roe are unknown agents, employees or persons who are part of the RICO Enterprise detailed below and who committed the crime of theft of property against Plaintiffs.

## II.    JURISDICTION

6.      Federal question jurisdiction exists in this Court  pursuant 49 U.S.C §14706 (the Carmack Amendment), Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. §1961 and 28 U.S.C. §1331. Supplemental jurisdiction over the state law claims is pursuant to 28 U.S.C. §1367.

## III.    VENUE

7.      Many of the events giving rise to these claims occurred within this District and this Court is a proper venue pursuant to 28 U.S.C. §1391(a) and (b)(2). Venue may also be appropriate in the Central District of California and the Southern District of Florida. Under *Atlantic Marine Constr. Co*. v. U.S. Dist. Ct., 571 U.S. 49 (2013), this District is favored.

## IV.    FACTUAL BACKGROUND TO ALL COUNTS

### A. **Moving Brokerage and Representations by Moving Broker US Pro:**

8.      On October 16, 2020, Plaintiffs accepted an offer to sell their Central Point, Oregon home. Closing of this transaction was on November 5, 2020. The buyers placed insurance on the property in their name on November 6, 2020.  Title was conveyed and recorded to the new owners on November 12, 2020. The terms of closing allowed Plaintiffs to remain in possession until November 23, 2020, or until they completed the removal of their personal property therefrom, whichever date was earlier.  A duplicate set of keys was provided to the new owners on November 21, 2020.

**COMPLAINT** - 3

9.      On October 19, 2020, Plaintiffs were contacted by telephone by US Pro, a United States Department of Transportation ("DOT") licensed "broker", through an internet referral service.

10.     Plaintiffs later reviewed the US Pro website which contained purported highly positive customer reviews. It did not list the names of the DOT licensed "movers" to whom it contracted the moving services. However, the US Pro website promised protection from unscrupulous movers stating: "Many moving companies will tell you the price you want to hear over the phone. Then on the day of the move, that price has drastically increased. Don't be a victim of these practices."

11.     US Pro held itself out as a moving broker that would  "advocate on behalf of the client since we are their interstate coordinator".

12.     Relying as retirees upon the strong business ethics represented during the telephone communication with US Pro reaffirming its "don't be a victim" message, and vigorously bolstered by US Pro's  express representations that it is a "full service" highly rated and recognized reputable moving broker, on October 19, 2020, Plaintiff entered into a written contract placing the move with US Pro.

13.     At the time of entering three "Binding Moving Estimate" contract with US Pro between October 19 and November 18, 2020 as described in the "Contract Descriptions" section below, US Pro had not disclosed the name of the licensed mover it would contract for the move. On November 23, 2020, Plaintiffs were first informed that a mover had been retained, but Plaintiffs were given only a phone number and not the mover's name.  Through their own efforts Plaintiffs discovered D United was the selected "trusted mover".

**COMPLAINT - 4**

T M GUYER and AYERS & FRIENDS, PC
116 Mistletoe Street, Medford, OR 97501
(206) 535-2395

**B. <u>Plaintiffs Confronted US Pro with Deceptive Trade Practices Complaints Against US Pro and D United:</u>**

14.     During their wait and after repeatedly contacting US Pro and D United, Plaintiffs conducted internet research on the company and discovered substantial consumer reviews and complaints by customers of both defendants on the Department of Transportation, Yelp and Better Business Bureau websites suggesting criminality, including for contract and refund fraud, conversion of property or "hostage taking", and deceptive trade practices.

15.     Plaintiffs confronted US Pro with these negative reviews of D United, but were assured that US Pro was familiar with and rejected on the merits the entire volume of negative reviews online about D United.  Plaintiffs relied upon this rejection to continue their performance of the contract with US Pro and D United.

**C. <u>Plaintiffs' Attempts to Cancel Contract with US Pro Resulting in Coerced Higher Price:</u>**

16.     Assuming full statutory compliance, consumers have a five day window to cancel their US Pro scheduled move from the date of booking to be eligible to receive a refund of the deposit minus 10% for administrative fees.  Plaintiffs also had a five day window prior to the actual move to cancel but with loss of the deposit.

17.     On November 18, 2020, Plaintiffs gave US Pro timely email notification of their election to cancel the contract within five days of the scheduled move on November 23, 2020.  In a telephone call made by US Pro in response to said email cancellation notice, US Pro assured Plaintiffs that it would manage the move successfully with whatever mover it selected. Based upon those affirmative representations by US Pro and coercion, Plaintiffs (a) withdrew their cancellation notice, and (b) agreed to pay US Pro a demanded additional $500 to insure timely

**COMPLAINT** - 5

performance of US Pro's contract with the selected mover, which Plaintiffs later learned was D United.

### D. **Moving and Irregularities by Mover D United in Oregon on November 25, 2020:**

18.     On November 22, 2020, Plaintiffs texted US Pro of the "no show" status of the then unknown mover, given that  US Pro was responsible for coordinating with that unknown mover.  Plaintiffs then called US Pro the next day on November 23, 2020, and were told to contact the mover by phone without providing the mover's name or DOT registration.  Plaintiffs discovered on their own the identity of the unnamed as D United.

19.     Thereafter, US Pro abandoned Plaintiffs' needs, and directed them to deal with D United themselves.

20.     After Plaintiffs' repeated calls on November 22 to 25, 2020 were met with repeated excuses and no-shows for D United, and repeated failing to communicate or reliably confirm the move date, D United arrived on less than 24 hours notice to load Plaintiffs' household goods-- at 9:30pm on November 25, 2020.

21.     The D United employees who showed up that night demanded Plaintiffs sign a completely blank federally required forms before they could start to load Plaintiffs' household goods.

22.     Since D United was already three days late from the original date for the move, Plaintiffs had all their household goods ready mostly boxes in addition to furniture. Plaintiffs had all household goods which were in undamaged and well-maintain condition, consolidated in the living room, a bedroom off the porch, such that D United did not have to dismantle anything or go to any other rooms except these three areas.

T M GUYER and AYERS & FRIENDS, PC
116 Mistletoe Street, Medford, OR 97501
(206) 535-2395

23.     There were no supplies that D United had to use in order to load Plaintiff's household goods. Later Plaintiffs learned that D United had charged $340 for packaging materials and preparation.

24.     Plaintiffs had given US Pro a federally required "Articles List".  D United undertook loading of its truck, a 26 foot Budget Truck number 626080, from 9:30pm on November 25th until 1:30 am on November 26th.

25.     Despite having contracted for nearly double the required cubic feet for all of their household goods, D United said this large truck was too small for all of Plaintiffs' household goods. However, according to the D United employees loading 26 foot Budget Truck number 626080, it already contained cargo from different customers. Plaintiffs observed that Budget Truck number 626080, which has a published capacity of 1,700 cubic feet, was already loaded to approximately 80% capacity, to wit, 1300 to 1400 cubic feet had already been consumed by the goods of different customers.

26.     Before leaving at 1:30am, D United informed Plaintiffs that it would return later in the day to complete the loading.

**E. Moving Irregularities by Mover D United in Oregon on November 26, 2020 and Coercive Demand for a Higher Price:**

27.     When D United returned at 11:00 am on November 26, 2020, they completed loading all of Plaintiffs' household goods including their Sentry Valueguard 1330 Fireproof Combination Safe, again into 26 foot Budget Truck number 626080 .  All of Plaintiffs' household goods taken away at 1:30am on November 26, 2020 were no longer in that truck, and D United would not say where that property had been offloaded from the truck.

**COMPLAINT** - 7

28. Only at that point did D United, by then possessing in its truck and wherever it had put Plaintiffs' household goods from the night before, claim that the required cubic feet of Plaintiffs' household goods exceeded 1400 cubic feet. On the spot D United demanded to be paid a revised total of $4,409.00, more than150% more than the agreed price brokered by US Pro, and wrote this demand on an inventory sheet. D United's demanded 50% of this amount be paid in cash on the spot, to wit, $2,204.50. With the first truckload of their property already taken hostage by D United, and with the Sentry Valueguard 1330 Fireproof Combination Safe loaded into the truck, Plaintiffs gave the movers all the cash had which was $1,500.  D United took that cash as a "deposit" and orally stated that the $2, 909.50 balance would have to be paid in cash at the time of delivery in Desert Hot Springs.

29. Plaintiffs' contract with US Pro specified that if household goods had a cubic feet volume beyond that contracted, then the charge was contractually locked in rate of $3.75 per cubic foot, later reduced by US Pro to $3.15 per cubic foot.  D United's demand for additional payment ignored this contractual rate.

30. D United then left Plaintiff's' residence with that truckload of their household goods. Before departing, D United gave Plaintiffs two illegible and incomplete carbon copy sheets of paper. These sheets did not meet federal requirements.

31. Plaintiffs were told by D United that delivery to the contracted destination in Desert Hot Springs, California would be completed between December 1 to 3, 2020. The actual delivery did not occur until December 19, 2020.

32. Four items of household goods that D United failed to list in any written form, but which Plaintiffs photographed as D United took possession of them, included a strong, fireproof valuables safe that contained an antique gold watch valued at $15,000 in view of its provable

**COMPLAINT** - 8

T M GUYER and AYERS & FRIENDS, PC
116 Mistletoe Street, Medford, OR 97501
(206) 535-2395

history and provenance. This watch had great sentimental value and originated with Plaintiff Fred Marti's father, a Swiss immigrant and watchmaker dating to the early 1900s.

33.    The remaining household goods were a 16-foot extension ladder, two stepladders, a leather chair and ottoman, and two furniture dollies. These items and a bicycle have never been delivered.

### F. <u>Moving Irregularities by Mover D United in California on December 19, 2020, Coercive Demand for a Higher Price and Police Protection:</u>

34.    Despite repeated calls and texts to US Pro and D United, and repeated unkept promises of new delivery dates, Plaintiff's household goods were not delivered to the contracted location until December 19, 2020.  Plaintiffs' items arrived there on a much smaller 16-foot Budget Truck number 917078, having a maximum capacity of 658 cubic feet. All of Plaintiffs' household goods filled this truck to approximately 75% capacity, approximately 500 cubic feet, not the 1400 cubic feet demanded without the federally required paperwork on November 26, 2021 at Plaintiff's Oregon home.

35.    Because of substantial number of consumer reviews and complaints against D United on the Department of Transportation, Yelp and Better Business Bureau websites suggesting a history of criminality by D United, Plaintiffs became fearful of its employees.

36.    Fearing this criminality, especially given Plaintiff Fred Marti's age though vigorous in his late seventies, Plaintiffs ask the Riverside County California Sheriff's Department to be present for protection when the D United truck arrived at their manufactured home park in Desert Hot Springs. An officer was dispatched per their request.

37.    Upon arrival of D United's 16 foot Budget Truck number 917078, Plaintiffs immediately demanded the filled-in "Joint Consolidated Bill of Lading, Freight Bill, and

COMPLAINT - 9

Warehouse Receipt Summary of Charges" they learned that federal law required. The D United employee stated he did not have it, and that it may be at D United's warehouse. Plaintiffs became worried and upset.

38.    The Riverside County Sheriff's deputy urged the D United driver to contact the company and to at least have mobile phone photographs of the required documents transmitted. The D United driver did so and held his phone up for Plaintiffs to look at the document images. Plaintiffs tried with limited success to read these cellphone document images, and had no opportunity to fairly consider and understand them.

39.    The mobile phone images contained a purported text message payment demand from D United for an additional $2,700 rather than the $2,909 demanded in Oregon after the November 26, 2020 truck loading. The D United employee suggested the difference was "a little discount."

40.    Plaintiffs refused to pay the balance due without being provided a paper or pdf copy of the "Joint Consolidated Bill of Lading, Freight Bill, and Warehouse Receipt Summary of Charges", not merely small photos of it, required by federal law, but were told that without the payment, D United would leave with their possessions.

41.    With this act of extortion, Plaintiffs paid the demanded $2,700.

**G. Locked Safe Break-in at D United's Warehouse and Theft of Gold Watch:**

42.    At the time of delivery on December 19, 2020 with the sheriff deputy present, Plaintiffs asked for confirmation that their valuable safe was inside Budget Truck number 917078. The employee telephoned D United and confirmed the safe was in the truck. After paying, the D United employee opened the truck.

**COMPLAINT** - 10

T M GUYER and AYERS & FRIENDS, PC
116 Mistletoe Street, Medford, OR 97501
(206) 535-2395

43.     The safe, a high security Sentry Valueguard 1330 Fireproof Combination Safe, was there but had been broken into using obvious clawing instruments. The safe door was being held closed by movers tape. The golden watch heirloom was gone.

44.     The D United employee stated that the safe had been broken into in the warehouse, and stated his suspicion as to the identity of the thief.

45.     Plaintiffs reported the theft of the gold heirloom watch to the Riverside County Sheriff's Department by telephone, and to their homeowner insurer.

**H. Conversion of Unlisted Household Goods by D United and Property Damage:**

46.     None of the other items not listed on the November 26, 2020 D United inventory were delivered from Budget Truck number 917078 on December 19, 2020 in Desert Hot Springs California, or since that time. The ransacked Sentry Valueguard 1330 Fireproof Combination Safe is the only item not listed in D United's November 26, 2020 inventory list that has ever been delivered.

47.     Despite D United having later acknowledged in text messages that it possessed three of the nine undelivered items, the company has refused or failed to return any of them to Plaintiffs.

48.     As Budget Truck number 917078 was unloaded, Plaintiffs observed many boxes and goods badly damaged or missing. One of Plaintiffs two mountain bicycles was missing, the other badly damaged. Valuable china tableware was also damaged. In total, nine items were missing.

COMPLAINT - 11

**I.** **Plaintiffs' Timely Submission of Claims to Mover and Broker; Failure to Provide Information re Arbitration:**

49.    Within 120 days of the delivery and non-delivery of Plaintiffs' household goods to them in California, Plaintiffs submitted multiple written claims for losses and damages to D United and US Pro, both of whom have acknowledged said claims.

50.    US Pro through the Florida Better Business Bureau agreed to give Plaintiffs only a $300 refund, and transferred that amount into Plaintiffs' bank account without authorization or written agreement or release of any kind. D United forwarded Plaintiffs' claim to its insurer but no action upon said claim beyond acknowledgment has been taken.

51.    At no time did D United itself or through its insurer timely inform the Plaintiffs in writing as to availability of the DOT required arbitration program for any disputes with D United as a mover. At no time did US Pro timely inform the Plaintiffs in writing as to availability of the DOT required arbitration program for any disputes with US Pro as a broker.

**J.** **Losses and Damages Suffered by Plaintiffs:**

52.    Plaintiffs incorporate by reference Appendix A, "Summary of Damages."

53.    Plaintiffs' total property losses are $17,553.00.

54.    Plaintiffs' total payments to the defendants for the move were $5,178.00.00

55.    Plaintiffs' emotional distress damages for Counts IV and V, negligent hiring and conversion, are $50,000.00.

56.    Plaintiffs seek $100,000.00 in punitive damages on Counts IV and V, negligent hiring and conversion.

**T M GUYER and AYERS & FRIENDS, PC**
116 Mistletoe Street, Medford, OR 97501
(206) 535-2395

## V.    SPECIFIC FACTS RE FEDERALLY REQUIRE BROKERAGE AND MOVING DOCUMENTS

### A.  US Pro Federally Mandated Forms:

### *(1) First "Binding Moving Estimate", October 19, 2020*:

57.     Following the initial telephone call with US Pro, Plaintiffs received a "Welcome" email from support@movingpros.org transmitting a "Binding Moving Estimate" dated October 19, 2020. That email described the scope of service as follows: "At this time we would like to inform you that we (Customer Service/Dispatch Department) will be your main point of contact from now until your goods are delivered." Plaintiffs relied upon US Pro's representation in said email that "US Pro Moving is a NATIONALLY RECOGNIZED EXPERT  in the moving and relocation industry." (Original emphasis).

58.     The US Pro "Binding Moving Estimate" dated October 19, 2020 contained stated "Total Moving Estimate $1938.02", and "Full Value Protection Amount of Liability $13,482.00 (optional)".

59.     In addition to the representations made in the Welcome email, the "Binding Moving Estimate" dated October 19, 2020 promised as follows: "This estimate includes *** Expert advice and guidance throughout the course of your move."

60.     The "Binding Moving Estimate" dated October 19, 2020 also promised that Plaintiffs would receive an "Itemized inventory indicating condition at origin of items".

61.     The "Binding Moving Estimate" dated October 19, 2020 paragraph 9 promised: "Customer has elected a 'binding not to exceed' price.  The total cost will not exceed the estimated amount; provided however that *** US Pro Moving is provided with an accurate description of the services to be performed."

**T M GUYER and AYERS & FRIENDS, PC**
116 Mistletoe Street, Medford, OR 97501
(206) 535-2395

62.     The "Binding Moving Estimate" dated October 19, 2020 stated that the expected date of the move would be November 22 or 23, 2020. This date was agreed to because Plaintiffs emphasized repeatedly to US Pro that they had sold their Oregon home and they must be out not later than November 23, 2020.

*(2) Second "Binding Moving Estimate", November 17, 2020:*

63.     On November 17, 2020, Plaintiffs provided to US Pro by phone their detailed "Articles List" and their growing sense of desperation that they must legally vacate in 6 days. Plaintiffs tried to give their Articles List to US Pro on November 15, 2020, which was one week before the move, per prior representations of US Pro. But on November 15, 2020, US Pro rescheduled the call to November 17, 2020, which was five days before the move, and the last date Plaintiffs had the option to cancel under the October 19, 2020 "Binding Moving Estimate".

64.     At the end of the phone call on November 17, 2020, US Pro stated in its contractually promised role as their adviser and guide, that the required cubic feet had to more than doubled and advised Plaintiffs that they had to buy 850 cubic feet, up from 321 cubic feet specified in the October 19, 2020 "Binding Moving Estimate". US Pro rejected Plaintiffs' calculations disputing such a large increase.  However, under the duress of needed to vacate the home, Plaintiffs relied upon that guidance and agreed to large cubic feet volume.

65.     US Pro then announced the new price would more than triple from $1938.02 to $6,974.21. This price increase included a more than doubling of "Estimated Volume" from 321 cubic feet per the October 19, 2020 "Binding Moving Estimate" to 816 cubic feet, and the "Full Value Protection Amount of Liability" rising from $13,482.00 to $34,272.00.

66.     Under the duress of moving from the house that was no longer theirs, they agreed to the November 17, 2020 "Binding Moving Estimate" the US Pro emailed to them after the

**COMPLAINT** - 14

T M GUYER and AYERS & FRIENDS, PC
116 Mistletoe Street, Medford, OR 97501
(206) 535-2395

November 17, 2020 phone call. Plaintiffs then electronically signed it. However, after Plaintiffs studied the November 17, 2020 "Binding Moving Estimate", they discovered that the largest cost item causing the major price increase was not the larger cubic feet quoted, but was the amount of money US Pro intended to pay to itself as broker through its original "Origin/Destination Fee" of $1,450 (less AAA discount) rising to its new "Origin/Destination Fee" of $5,500 (less AAA discount). Plaintiffs then called US Pro but the company's phone message instructed customers should cancel by email.

67.    On November 18, 2020 at 6:21am, Plaintiffs sent an unequivocal cancellation email to US Pro at "cancel@movingpros.org" with subject line  Cancellation of Job No: US7257305".

### (3) Third Binding Moving Estimate, November 18, 2020:

68.    Instead of cancelling, US Pro telephoned Plaintiffs on November 18, 2020, and said they would apply a large "veterans discount" to lower the price. However, the $1,800 "AAA***QA Discount***" discount from the November 17, 2020 "Binding Moving Offer" remained the same $1,800 but was simply renamed as "AAA//Veteran Discount".  Instead, what was reduced was US Pro's November 17, 2020 "Origin/Destination Fee" of $5,500 (less $1,800 discount) being reduced to a new November 18, 2020 "Origin/Destination Fee" of $2,900.00 (less $1,800 discount).  Plaintiffs under even more duress than the day before, agreed to these new terms.

69.    On November 18, 2020, US Pro sent a third and final "Binding Moving Estimate" with that date confirming the terms stated earlier in that telephone conversation. US Pro insisted Plaintiffs remain on the phone as a terms sheet for final "Binding Moving Estimate" was simultaneous email.  US Pro would not let Plaintiffs off the phone to read that long and complex

**COMPLAINT** - 15

T M GUYER and AYERS & FRIENDS, PC
116 Mistletoe Street, Medford, OR 97501
(206) 535-2395

document, and demanded that while on the phone they provide authorization for US Pro to take a direct wire withdrawal of $500.00 from their bank account.  US Pro's electronic signing method is not to have Plaintiffs read and sign the document itself, but to affirm signature by a separate email while still on the telephone with US Pro.

70.     Only after being let off the telephone did Plaintiffs have an opportunity to read what they had been coerced to electronically sign.  Despite the sudden $3,000 price drop which US Pro claimed to be an "AAA/Veteran Discount", the "Estimated Volume" remained at the upwardly revised 850 cubic feet volume, as did the upwardly revised " Full Value Protection Amount of Liability" of $35,700.00.  The price per cubic foot, which is dictated by published DOT tariffs, had without explanation dropped from $3.75 per cf. on the October 19, 2020 "Binding Moving Estimate" down to $3.15 per cf. on the November 17, 2020 "Binding Moving Estimate" and the November 18, 2020 "Binding Moving Estimate".

71.     Added to the final page of the November 18, 2020 "Binding Moving Estimate" was an "Articles List" showing "37 items, 127 Pieces", including Plaintiffs' valuables "1 safe, small", as well as each of the other five items that have yet to be delivered, with the notable exception of the broken-into safe, door dangling by movers packing tape.

**B. D United Federally Mandated Forms:**

72.     On November 25, 2020 at 9:30 pm, Plaintiffs'/retirees normal bedtime, D United arrived at Plaintiffs' Central Point, Oregon home, by which time Plaintiffs were in violation of the real estate closing agreement to have turned possession over to the new owners on November 23, 2020. Plaintiffs were presented with the following two documents and instructed that before loading the truck, they must sign them both although none of the form fields had been filled-in: the (1) "Joint, Consolidated Estimate and Order for Service", and the (2) "Joint, Consolidated

COMPLAINT - 16

Bill of Lading, Freight Bill and Warehouse Receipt".  After signing these blank forms, D United began loading the truck.

73.     As D United then began loading its truck with Plaintiffs' household goods, they noticed that the D United employees were entering loaded items on a two page "Household Goods Descriptive Inventory" in which all of the required information on the top of the form was left blank.  At the bottom of form, the following fields were also blank: "Tape Lot No.", "Tape Color", and Nos. ___ Thru ____." The form fields for "Contractor, Carrier or Authorized Agent (Driver) and Date" were also blank. Plaintiffs used their mobile phone to photograph this "Household Goods Descriptive Inventory".

74.     At 1:30am on November 26, 2020, D United left with a large volume of Plaintiffs' household goods to a place unknown, with some but not all of their household goods having been written on the "Household Goods Descriptive Inventory". D United stated only that an identified truck that was "passing through" Southern Oregon would take possession of Plaintiffs' household goods.

75.     D United returned at 11:00am on November 26, 2020 to load the balance of Plaintiffs' household goods. Only after D United had taken possession of all of Plaintiffs' household goods and loaded them into the truck at approximately noon on November 26, 2020 did D United present the "Household Goods Descriptive Inventory" to Plaintiffs.  However, D United informed Plaintiffs that the 850 cubic feet US Pro had entered on the November 18, 2020 "Binding Moving Estimate" was too low because US Pro did not know how to calculate cubic feet.   In handwriting on the "Household Goods Descriptive Inventory" form appeared the following: "Total $4,409.08".   D United demanded be paid 50% of this amount in cash, and the balance at time of delivery in California.  Plaintiffs were instructed they must sign said

**COMPLAINT** - 17

"Household Goods Descriptive Inventory", pay the new higher amount in cash, lest the truckload of their household goods would not be delivered but would be taken away to a place unknown.

76.    In Plaintiffs' presence on November 25 and 26, 2020, D United employees made repeated interstate mobile phone calls to D United headquarters in California to obtain all information to be added to the above referenced blank forms.

77.    Because Plaintiffs only had $1,500 in cash which was less than 50% of the demanded new price, D United took that cash and added the following to the "Household Goods Descriptive Inventory" form: "Paid Today $1,500.00".  Being holdovers on the real property, Plaintiffs signed under coercion to pay the new $4,409.08 price which substantially exceeded the US Pro November 18, 2020 "Binding Moving Estimate", US Pro having brokered the move to D United for a "not to exceed" price that was far lower.

78.    The "Joint, Consolidated Estimate and Order for Service", and "Joint, Consolidated Bill of Lading, Freight Bill and Warehouse Receipt", both of which had been dated "11/25/20" when they signed them blank, had at the time of delivery of Plaintiffs' household goods in California on December 19, 2020 overwritten as "11/26/20" on the top date field of each required form.

79.    The larger cubic feet volume, the larger $4,409.08 price and some other fields had been filled-in by D United on a date and time unknown to Plaintiffs. The second page of the "Joint, Consolidated Estimate and Order for Service" had handwritten in "816 cu. ft. $2,507.40", and "Addt'l cu. ft 484, $1,524.60".

80.    The "Joint, Consolidated Estimate and Order for Service" was still left blank on the required fields for selecting the type of estimate as "Binding" or "Nonbinding". Also still blank was the field "Total Value of my shipment is: _____ (To be provided by customer)".

**COMPLAINT** - 18

T M GUYER and AYERS & FRIENDS, PC
116 Mistletoe Street, Medford, OR 97501
(206) 535-2395

81.    The "Joint, Consolidated Bill of Lading, Freight Bill and Warehouse Receipt" which Plaintiffs could only view on the D United employee's mobile phone, had been overwritten as "11/26/20" from the original "11/25/20" and stated the following in fields that had been blank when Plaintiffs signed: "Grand total $5,937.00, less deposits $1,278.00, Less payment at Origin $1,500.00, Total Balance Due $2,900.00, Destination Charges $350, New Balance Due $2,904.00". These terms were higher than those specified in US Pro's November 18, 2020 "Binding Moving Estimate".

82.    The "Joint, Consolidated Bill of Lading, Freight Bill and Warehouse Receipt" that Plaintiffs were instructed to sign with blank fields before loading the truck had even begun on November 25, 2020 required Plaintiffs to sign the following "Delivery Acknowledgment": "The shipper hereby acknowledges that the shipment was received in apparently good condition, except as noted on the inventory list.  Furthermore, the shipper acknowledges that all the services that were ordered have been performed, have been fully satisfied, and the truck was inspected, and nothing has been left behind."  Plaintiffs were coerced to sign this "Delivery Acknowledgment" in Oregon for a delivery that would not made until December 19, 2020 in California.

83.    Plaintiffs have not even to the present date been provided with a copy of this "Joint, Consolidated Bill of Lading, Freight Bill and Warehouse Receipt".  They have only a mobile phone photograph of it.

### C. Non-Compliance by Both Defendants re Insurance and High Value Items

84.    During Plaintiffs phone call with US Pro on November 17, 2020, after being instructed to purchase 850 cubic feet of truck space to guard against a last minute price increase by the unnamed mover, Plaintiffs attempted to purchase full coverage insurance that was offered

COMPLAINT - 19

on the November 18, 2020 "Binding Moving Estimate" for the "Full Value Protection Amount of Liability" of $35,700.00.  US Pro dismissed Plaintiffs' effort to buy such insurance by stating "you will be fully protected" for the full value of all household goods. D United never at any time provided Plaintiffs with an opportunity to purchase any insurance.

85.    Although Plaintiffs listed their safe on the November 18, 2020 US Pro "Articles List", US Pro never inquired into the value of the contents thereof.

86.    Similarly, although D United took possession of Plaintiffs' safe on November 26, 2020 and refused to enter it on the "Household Goods Descriptive Inventory", D United never inquired into the value of the contents thereof.

87.    Because Plaintiffs were never given any opportunity to fill-in anything other than their signature on the "Joint, Consolidated Estimate and Order for Service", and "Joint, Consolidated Bill of Lading, Freight Bill and Warehouse Receipt", they were deprived of any opportunity to read, understand, or respond to the following language in the "Joint, Consolidated Bill of Lading, Freight Bill and Warehouse Receipt":

> All items included in your shipment that are considered to be of extraordinary (unusual) value must be specifically identified and D.U.L. [D United Logistics] must be advised that they are included in the shipment. Items of extraordinary value are defined as those having a value greater than $100 per pound. Typical household goods items that frequently have a value in excess of $100 per pound per article are: currency, coins, jewelry, *** gold, *** china sets, *** antiques, *** [and] rare collectible items. Of course, other items may be into this category and must be identified as well. The purpose of this inventory is to assist you in identifying articles of extraordinary or unusual value in order that D.U.L. will be aware of those items which require special handling and protection. Failure to identify such articles will result in limited liability.

88.    Consequently, the fields for "List No.  Description of Articles Exceeding $100 Per Pound Per Article" were left blank.

**COMPLAINT** - 20

T M GUYER and AYERS & FRIENDS, PC
116 Mistletoe Street, Medford, OR 97501
(206) 535-2395

89.     D United also failed to provide Plaintiffs with the following federally required guides for movers: "Your rights and Responsibilities When You Move", and "Ready to Move?" published by the DOT Federal Motor Carrier and Safety Administration, both of which explain moving insurance.

90.     D United's "Joint, Consolidated Bill of Lading, Freight Bill and Warehouse Receipt" that it required Plaintiffs to sign in blank provides:

> Do Not Execute Until Pickup: *** You acknowledge that you have received the booklet "Your rights and Responsibilities When You Move", as well as the brochure: "Ready to Move?" If you do not receive a copy of any of these items, they can be mailed to you for free by calling (888) 851-2056 or visiting the website of www.dunitedmoving.com.

91.     The referenced website "www.dunitedmoving.com" did not exist on the date of the move. Plaintiffs have subsequently purchased that domain to prevent D United from belatedly registering it.

## VI.    SPECIFIC FACTUAL BACKGROUND TO RICO CLAIM

### A.    The Enterprise:

92.     D United is a "mover" authorized by the federal government to provide interstate shipping of household goods pursuant to the terms of a published federal tariff known as the Household Goods Carrier Bureau's Tariff.  US Pro is an authorized "broker" to contract with "movers" and did so contract with D United.

93.     Defendants John Doe and Jane Roe are individual thieves acting for or with D United and US Pro who are part of the criminal Enterprise described herein.

94.     US Pro contracts with regional shipping companies that act as local disclosed agents of US Pro and provide marketing, sales, scheduling and binding estimates for movers like D United for pick-up, hauling, storage, and delivery services pursuant to US Pro authority.  US

T M GUYER and AYERS & FRIENDS, PC
116 Mistletoe Street, Medford, OR 97501
(206) 535-2395

Pro is legally obligated by federal regulations to require that its local agents and movers such as D United comply with regulations and written guidelines regarding line haul charges, discounts, additional service charges, and transit and delivery standards.

95.    US Pro is not a "mover" or "carrier" under federal regulations and does not provide any packing, unpacking, hauling or warehouse services directly to customers.

96.    US Pro and D United contract with individual shippers like Plaintiffs to transport household goods across interstate lines.

97.    Both US Pro and D United engage in and affect interstate commerce by brokering and/or providing interstate shipping services of household goods to individual shippers, at times contracting to provide as many as 400 interstate moves or more per day.

98.    In requiring Plaintiffs to use the internet to affix electronic signatures to required federal documents, and to use email, telephone and texting means of communication, the Enterprise has engaged in predicate acts of wire fraud in violation of 18 U.S.C. § 1343, theft from an interstate shipment in violation of 18 U.S.C. § 659, and extortion/robbery in violation of 18 U.S.C. § 1951.

99.    Intentional violations of the Carmack Amendment 49 U.S.C. § 14706 et seq. and implementing regulations are subject to criminal prosecution by both the United States and the separate states.

100.    Plaintiffs have suffered loss of property and other incidental and consequential damages including, but not limited to, loss of high value items by reason of the Enterprise's racketeering activity.

**B. Wire Fraud:**

101.    US Pro and D United executed a scheme to induce Plaintiffs to enter into

T M GUYER and AYERS & FRIENDS, PC
116 Mistletoe Street, Medford, OR 97501
(206) 535-2395

contracts for brokerage and interstate shipping services by falsely promising and misrepresenting that the cost of their move was guaranteed "not to exceed" the stated prices of the referenced binding estimates.

102.    In furtherance of their scheme, US Pro and D United made use of the means of wire communication by internet, telephone, email, and text messaging by interstate wires as described above.

103.    As demonstrated by their conduct, US Pro and D United had a specific intent to defraud Plaintiffs either by devising or participating in the scheme to induce them to enter into  contracts for brokerage and shipping services by promising that the cost of their move was guaranteed "not to exceed" the estimate, taking possession of their household goods, and then refusing to release said goods without payment of substantially more than of the original and revised estimates.

104.    As a result of the Enterprise's wire fraud, Plaintiffs suffered loss of property and other incidental and consequential damages including, but not limited to, loss of high value property, including their family heirloom watch.

**C. Theft From Interstate Shipment:**

105.    D United and/or other members of the Enterprise stole and/or refused to deliver and relinquish possession of Plaintiffs property on the pretext that Plaintiffs owed more money.

106.    D United and/or other members of the Enterprise unlawfully took, carried away, and/or obtained Plaintiffs' goods by fraud or deception with the intent to convert such goods to their own use.  Plaintiffs' family heirloom gold watch, bicycle, and other household goods were unlawfully taken by D United and/or other members of the Enterprise  from a storage location in Oregon and/or from a warehouse in California owned,

COMPLAINT - 23

operated or used by D United during a time period in which said property was not being moved or transported, but was only being stored.

**D. <u>Extortion/Theft:</u>**

107.    US Pro induced the Plaintiffs to contract with D United and the Enterprise for moving services by giving them a guaranteed "not to exceed" estimate for the cost of the move, and by making false statements regarding the nature, expertise and price of their services.

108.    Before, during and after loading Plaintiffs' household goods onto their trucks, D United and the Enterprise required Plaintiffs to sign federally required moving documents that did not contain the guaranteed "not to exceed" price from the original and revised binding estimates.

109.    Upon arriving 18 days late with Plaintiffs' goods in California, an agent of D United, acting within the apparent scope of his authority, told Plaintiffs that D United would not unload Plaintiffs' goods if they did not pay more than the guaranteed "not to exceed" estimate and revised estimates.

110.    The acts of US Pro, D United and other as yet unknown members of the Enterprise affected or attempted to affect interstate commerce by extorting from the Plaintiffs more than the guaranteed "not to exceed" costs, expenses and fees of the move from Oregon to California through wrongful use of threatened force against their property.

**E. <u>Pattern of Racketeering Activity and Continuing Enterprise:</u>**

111.    Predicate acts similar or identical to the wire fraud used against Plaintiffs are a regular method through which the Enterprise operates. Official records of the DOT show the following complaints against the Enterprise members:

**T M GUYER and AYERS & FRIENDS, PC**
116 Mistletoe Street, Medford, OR 97501
(206) 535-2395

**D United Complaints**:

| Year | Total Complaints |
|------|------------------|
| 2019 | 7 |
| 2020 | 22 |
| 2021 | 7 |

| Complaints by Category | Year | | |
|------------------------|------|------|------|
| | **2019** | **2020** | **2021** |
| Unauthorized Operations | n/a | n/a | n/a |
| Operating Authority | 0 | 1 | 0 |
| Insurance | 0 | 1 | 0 |
| Shipment Documents | 3 | 12 | 6 |
| Estimates/Final Charges | 4 | 17 | 5 |
| Weighing | 3 | 8 | 2 |
| Hostage | 2 | 9 | 3 |
| Pickup and Delivery | 2 | 14 | 5 |
| Loss and Damage | 3 | 10 | 1 |
| Claim Settlement | 1 | 10 | 2 |
| Other Commercial Complaints | 0 | 0 | 0 |
| Owner Operator – Leasing Violations | 0 | 0 | 0 |
| Consumer Complaint(Deceptive Business Practices) | 3 | 10 | 4 |
| Whistleblower Complaint | 0 | 1 | 0 |

**US Pro Complaints**:

| Year | Total Complaints |
|------|------------------|
| 2020 | 63 |
| 2021 | 44 |

| Complaints by Category | Year | |
|------------------------|------|------|
| | **2020** | **2021** |
| Unauthorized Operations | n/a | n/a |
| Operating Authority | 3 | 6 |

T M GUYER and AYERS & FRIENDS, PC
116 Mistletoe Street, Medford, OR 97501
(206) 535-2395

| Insurance | 1 | 0 |
|---|---|---|
| Shipment Documents | 29 | 20 |
| Estimates/Final Charges | 37 | 24 |
| Weighing | 9 | 7 |
| Hostage | 11 | 16 |
| Pickup and Delivery | 25 | 27 |
| Loss and Damage | 5 | 9 |
| Claim Settlement | 17 | 10 |
| Other Commercial Complaints | 0 | 0 |
| Owner Operator – Leasing Violations | 0 | 0 |
| Consumer Complaint(Deceptive Business Practices) | 45 | 29 |
| Whistleblower Complaint | 0 | 0 |

112.     The Enterprise is engaged in an ongoing pattern of criminal and illegal conduct, and will continue to do so unless stopped.

113.     The members of the Enterprise used deceptive trade practices, unauthorized operations, hostage taking, "not to exceed" estimates and other forms of fraudulent statements and misrepresentation for years and continuing into 2021, to induce customers/victims into contracting with members of the Enterprise and surrendering to them possession of their goods for shipment. Then the Enterprise springs additional charges upon the customers/victims, exceeding the "not to exceed" estimates, and often refusing to deliver or release their goods until payment has been made.

114.     The members of the Enterprise have knowledge individually and jointly of deceptive trade practices, unauthorized operations, hostage taking, "not to exceed" estimates and other forms of misrepresentation and tactics that are used to induce customers/victims into signing contracts with a member of the Enterprise for interstate shipping. Each member of the Enterprise has agreed that someone within the Enterprise would commit at least two predicate

T M GUYER and AYERS & FRIENDS, PC
116 Mistletoe Street, Medford, OR 97501
(206) 535-2395

acts to accomplish the goals of the Enterprise.

## FEDERAL CLAIMS FOR RELIEF

**VII.    COUNT I.  DIRECT RIGHT OF ACTION  UNDER 49 U.S.C. § 14704(a)(2), 49 USCS § 14706 AND 49 CFR PARTS 371 AND 375**

*(Hymes v. King*, 2017 U.S. Dist. LEXIS 222569 (C.D. Cal. 2017))

115.    All paragraphs above are incorporated herein by reference.

### A.  Statutory and Regulatory Violations by Broker US Pro:

116.    49 CFR 371.2 defines the term "broker" a person who, for compensation, arranges, or offers to arrange, the transportation of property by an authorized motor carrier.

117.    49 CFR 371.109 mandates that a broker must provide to each potential shipper a list of all authorized household goods motor carriers the broker uses, including their U.S. DOT registration number and MC license numbers. US Pro failed to do so.

118.    49 CFR 371.113(b) requires each broker to base its estimate upon the published tariffs of the authorized motor carrier who will transport the shipper's household goods. US Pro failed to do so.

119.    49 CFR 371.115 mandates that each broker maintain an agreement with the selected mover before providing written estimates that will bind said mover. The written agreement with the mover must include a concise, easy to understand statement that the written estimate to the shipper will serve as the authorized household goods motor carrier's estimate for purposes of complying with the requirements of part 375 of this chapter. US Pro failed to do so.

### B. Statutory and Regulatory Violations by Mover D United:

120.    49 USCS § 14706(a)(d)(1) provides that a "civil action under this section may be brought against a delivering carrier in a district court of the United States or in a State court. Trial, if the action is brought in a district court of the United States is in a judicial district, and if

**COMPLAINT** - 27

in a State court, is in a State through which the defendant carrier operates."

121.    49 CFR 375.213(1) mandates that a carrier [hereafter "mover"] must provide to a shipper with the DOT publications titled "Ready to Move? — Tips for a Successful Interstate Move" and "Your Rights and Responsibilities When You Move" either as a copy or provide a hyperlink on the mover's internet website to the FMCSA website. D United failed to do so, and it had never registered or hosted the domain name stated in its documentation provided to Plaintiffs.

122.    49 CFR 375.213(2)  requires a mover to provide the shipper with a "concise, easy-to-read, accurate estimate of the moving charges". D United failed to do so.

123.    49 CFR 375.401(b) requires the mover before it executes an order for service to provide the shipper with a written estimate of the total charges and indicate whether it is a binding or a non-binding estimate.  D United failed to do so.  Such a binding estimate guarantees the total cost of the move based upon the physical survey of the household goods, when required.

124.    49 CFR 375.401(g)  requires the mover include as a part of its estimate the liability election notice provided in the Surface Transportation Board's released rates order. D United failed to do so.

125.    49 CFR 375.401(h) mandates that the mover must provide a dated copy of the estimate of charges to the individual shipper at the time the mover signs the estimate. D United failed to do so.

126.    49 CFR 375.401(i) forbids the mover from loading the shipper's household goods prior to providing the estimate of charges, or any amendment of the estimate after loading the shipment. D United violated this prohibition.

127.    49 CFR 375.403(11) forbids a mover making only a partial delivery from

**COMPLAINT** - 28

demanding upon delivery full payment of the binding estimate, and only a prorated percentage of the binding estimate may be demanded.  49 CFR 375.707 prescribes that when a shipment is partially lost or destroyed, the mover may collect at delivery only a prorated percentage of the binding estimate. D United violated these prohibitions.

128.    49 CFR 375.501(a)(10) mandates that before a mover receives a shipment of household goods it must provide the shipper with a written an order for service containing a statement of the declared value of the shipment, which is the maximum amount of the mover's liability for Full Value Protection of any household goods that are lost, damaged, destroyed, or otherwise not delivered to the final destination unless the shipper waives, in writing, said Full Value Protection liability.  D United failed to do so.

129.    49 CFR 375.501(h)  requires the mover to place the valuation statement on the bill of lading. D United failed to do so.

130.    49 CFR 375.501 forbids a mover from a requiring a shipper to sign an incomplete document at origin that does not contain all relevant shipping information "except the actual shipment weight and any other information necessary to determine the final charges for all services performed".   D United violated this prohibition.

131.    49 CFR 375.501(e)  mandates that the mover must provide the shipper the opportunity to rescind the order for service without any penalty for a three-day period after the shipper signs the order for service. D United failed to do so.

132.    49 CFR 375.503(a)  requires the mover to prepare a written, itemized inventory for each shipment of household goods that identifies every carton and every uncartoned item that is included in the shipment with an identification number that corresponds to the inventory and must be placed on each article that is included in the shipment. D United failed to do so.

**COMPLAINT** - 29

133.    49 CFR 375.503(c) mandates that the mover furnish a complete copy of the inventory to the individual shipper before or at the time of loading the shipment, not after loading. A copy of the inventory, signed by both the mover and the shipper must be provided together with a copy of the bill of lading, before or at the time of loading the shipment, and not after loading. D United failed to do so.

134.    49 CFR 375.505(a) requires the mover to issue a bill of lading before the vehicle leaves the residence at origin containing all relevant shipment information, except the actual shipment weight and any other information necessary to determine the final charges for all services performed. D United failed to do so.

135.    49 CFR 375.505(c)  mandates that copy of the bill of lading must accompany a shipment at all times while in the mover's possession. D United failed to do so.

136.    49 CFR 375.601 requires transportation of the shipment in a timely manner and compliance with the FMCSA "reasonable dispatch service" and honoring guaranteed pickup and delivery dates.  49 CFR 375.603 mandates that the mover must tender the shipment for delivery on the agreed delivery date or within the period specified on the bill of lading. D United failed to do so.

137.    49 U.S.C. § 14708(b)(2) "Dispute settlement program for household goods carriers" provides that a " carrier must provide the shipper an adequate notice of the availability of neutral arbitration *** and disclosure of the legal effects of election to utilize arbitration *** [and such] notice must be given to persons for whom household goods are to be transported by the carrier before such goods are tendered to the carrier for transportation". D United failed to do so.

COMPLAINT - 30

C. **Direct Right of Action Against Broker US Pro:**

138.    49 U.S.C. § 14704(a)(2) "Rights and remedies of persons injured by carriers or brokers" provides that every "carrier or broker providing transportation or service subject to jurisdiction under chapter 135 is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of this part." US Pro is covered by this provision.

139.    49 CFR 371.10 provides that "where a broker acts on behalf of a person bound by law or the FMCSA regulation as to the transmittal of bills or payments, the broker must also abide by the law or regulations which apply to that person."  US Pro is covered by this provision.

140.    49 CFR 371.121 provides not only that the penalty provisions of 49 U.S.C. chapter 149, "Civil and Criminal Penalties" apply to brokers, but that these "civil penalties do not overlap".

141.    Moreover, 49 CFR 371.121 provides that "notwithstanding such civil penalties, nothing in Part 371 deprives a shipper of any remedy or right of action under existing law."

D. **Direct Right of Action Against Mover D United:**

142.    49 U.S.C. § 14704(a)(2) "Rights and remedies of persons injured by carriers or brokers" provides that every "carrier or broker providing transportation or service subject to jurisdiction under chapter 135 is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of this part."

143.    49 CFR 375.707(d)  provides that a "shipper's rights are in addition to, and not in lieu of, any other rights the individual shipper may have with respect to a shipment of household goods" that the shipper "partially lost or destroyed in transit".

144.    That section further provides that his right of action "applies whether or not the individual shipper exercises any rights to obtain a refund of the portion of [the mover's]

T M GUYER and AYERS & FRIENDS, PC
116 Mistletoe Street, Medford, OR 97501
(206) 535-2395

published freight charges corresponding to the portion of the lost or destroyed shipment *** [for] claims for loss, damage, or injury to articles in the shipment under part 370 of this chapter."

145.    49 CFR 375.901 further provides that the "penalty provisions of 49 U.S.C. Chapter 149, Civil and Criminal Penalties apply to this part" and that as with brokers under Part 371, these penalties do not overlap.

146.    This section further provides that "notwithstanding these civil penalties, nothing in this section shall deprive any holder of a receipt or a bill of lading any remedy or right of action under existing law."

## VIII.    COUNT II: CARMACK AMENDMENT TO THE INTERSTATE COMMERCE ACT 49 U.S.C. § 14706 ET SEQ.

*(Campbell v. Allied Van Lines Inc., 410 F.3d 618 (9th Cir. 2005))*

147.    All paragraphs above are incorporated herein by reference.

148.    49 USCS § 14706(a) is a strict liability statute and provides in pertinent part:

A carrier providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 [49 USCS §§ 13501 et seq. or § 13531] shall issue a receipt or bill of lading for property it receives for transportation under this part [49 USCS §§ 13101 et seq.]. That carrier and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 or chapter 105 [49 USCS §§ 13501 et seq. or § 13531 or §§ 10501 et seq.] are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property***.

149.    US Pro and D United entered into enforceable bills of lading (hereafter "contracts") with Plaintiffs under the Carmack Amendment to the Interstate Commerce Act , 49 U.S.C. § 14706(a)(1) et seq and implementing regulations.

150.    Plaintiffs performed all conditions of the contract.

151.    D United violated the Carmack Amendment by failing to provide Plaintiffs, in

**COMPLAINT** - 32

accordance with the above regulations, a validly prepared estimate, bill of lading, and DOT required moving guides prior to the commencement of the moving of their household goods.

152.    D United breached the contract by failing to make delivery by the specified due dates of December 1-3, 2020.

153.    D United breached the contract by demanding payments in excess of the amount of the binding estimate that US Pro had negotiated with D United and Plaintiffs.

154.    D United breached the contract by refusing to deliver Plaintiffs' property for payments in excess of the binding estimate US Pro had negotiated with D United and Plaintiffs.

155.    D United and US Pro are liable to Plaintiffs for its failure to deliver Plaintiffs' property pursuant to the Carmack Amendment.

156.    If a bill of lading has been issued by carrier or on his behalf by a mover, and/or an agent or employee of the mover, the scope of whose actual or apparent authority includes the receiving of goods and issuing bills of lading for transportation in interstate commerce, the carrier shall is liable to the shipper of goods covered by the federally required documents. Absent valid waivers that were not properly executed in this case, US Pro and D United are liable for the full value of loss and damages caused by the non-receipt by the shipper of all or part of the goods upon or prior to the dates therein shown.

157.    D United is liable for the full value loss of Plaintiffs' property pursuant to, *inter alia,* 49 U.S.C. §14706, the "Carmack Amendment" to the Interstate Commerce Act.

158.    The liability imposed under this paragraph is for the actual loss or injury to the property caused by the carrier transported under a bill of lading".

159.    US Pro and D United's actions and omissions resulted in Plaintiffs' losses and damages as described herein.

**COMPLAINT** - 33

T M GUYER and AYERS & FRIENDS, PC
116 Mistletoe Street, Medford, OR 97501
(206) 535-2395

### IX.    COUNT III.  RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT 18 U.S.C. § 1962 ET SEQ

(*Chen v. Mayflower Transit Inc*., 315 F. Supp. 2d 886 (N.D. Ill. 2004))

160.    Plaintiffs incorporate by reference the allegations of the paragraphs above as through fully set forth herein.

161.    At all relevant times, D United, US Pro and the unnamed participants in the Enterprise were entities capable of holding a legal or beneficial interest in the Plaintiffs' property.

162.    D United, US Pro and the unnamed participants in the Enterprise comprise a group of movers, brokers and agents associated together and operating in concert as an Enterprise to market, sell, and provide interstate shipping services for household goods.

163.    D United and US Pro and others participated in the operation and/or management of the Enterprise and played a part in directing the Enterprise's activities.

164.    In violation of 18 U.S.C. § 1962(c), D United, US Pro and the unnamed participants engaged in various acts of racketeering including, but not necessarily limited to wire fraud in violation of 18 U.S.C. § 1343, theft from  an interstate shipment in violation of 18 U.S.C. § 659, extortion in violation of 18 U.S.C. § 1951.

165.    The Enterprise did so through intentional violations of the Carmack Amendment and implementing regulations. 49 CFR 371.121 provides that the penalty provisions of 49 U.S.C. chapter 149, "Civil and Criminal Penalties" apply to this subpart.

166.    D United, US Pro and the unnamed participants engaged in a pattern of such racketeering activity, committing similar and related predicate acts of wire fraud against other individual shippers, including but not limited to shippers who filed complaints against the defendants with the DOT, various Better Business Bureaus, and online consumer

**COMPLAINT** - 34

T M GUYER and AYERS & FRIENDS, PC
116 Mistletoe Street, Medford, OR 97501
(206) 535-2395

reviews.

167.    The practices constituting the predicate acts described herein are a regular way of doing business for the Enterprise.

168.    The activities of the Enterprise described herein affect interstate commerce in that the Enterprise continues to contract with as many unsuspecting shippers per month into 2021 to transport household goods across interstate lines.

169.    The Plaintiffs suffered loss of property and other incidental and consequential damages including, but not limited to loss and conversion of their property, loss and conversion of sentimental valued property, and emotional distress by reason of the Defendants' racketeering activity.

170.    D United US Pro and the unnamed participants conspired to violate 18 U.S.C. § 1962(c) by entering into an agreement to facilitate the activities of the participants, operators or managers of the Enterprise.

171.    D United, US Pro and the unnamed participants each agreed that someone within the Enterprise would commit at least two predicate acts in furtherance of the goals of the Enterprise.

172.    Because of this conspiracy, the Plaintiffs suffered loss of property and other incidental and consequential damages including, but not limited to, loss of their gold heirloom watch.

173.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to treble damages plus attorney's fees.

**COMPLAINT** - 35

## SUPPLEMENTAL UNPREEMPTED STATE LAW CLAIMS FOR RELIEF

## X.    COUNT IV.  NON-PREEMPTED NEGLIGENT HIRING AGAINST US PRO UNDER STATE LAW CAUSING PERSONAL INJURY/SEVERE EMOTIONAL DISTRESS

*(Mendoza v. Bsb Transp.*, 2020 U.S. Dist. LEXIS 198548 (E.D. Mo. 2020))

174.    The above paragraphs are incorporated herein by reference.

175.    Because the above referenced family heirloom gold watch was no longer in transit, this claim for negligent hiring is not preempted by the Carmack Amendment.

176.    Because the leather chair and ottoman and dolly were acknowledged by text on December 24, 2020 to be in D United's possession, said items are also no longer in transit, and this claim as to said items for negligent hiring is not preempted by the Carmack Amendment.

177.    US Pro knew or should have known from review of the DOT published complaint data and consumer reviews, and their delay in responding and all related circumstances, that D United could not be trusted to transport or deliver valuable property or to otherwise complete the move of Plaintiffs' property in a lawful manner.

178.    Plaintiffs became so afraid of D United employees due to their threats of extortion and other plainly unlawful and unprofessional practices, that they requested a police presence to protect them upon delivery in California.

179.    The fear experienced by Plaintiffs was so intense, that they suffered personal injury in the form of severe emotional distress which gave rise to physical symptoms including but not limited to constant anxiety, sleeplessness, and poor nutritional practices far outside the norm for them.

180.    Upon seeing their Sentry Valueguard 1330 Fireproof Combination Safe destroyed and ransacked,  this severe emotional distress was amplified and is still being experienced by

**COMPLAINT** - 36

T M GUYER and AYERS & FRIENDS, PC
116 Mistletoe Street, Medford, OR 97501
(206) 535-2395

Plaintiffs to this date.

181.    The loss of their family heirloom gold watch further amplified their personal injury and severe emotional distress which is still being experienced by Plaintiffs to this date.

## XI.    COUNT V.  NON-PREEMPTED CONVERSION BY D UNITED UNDER STATE LAW

*(Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251 (2013))

182.    The above paragraphs are incorporated herein by reference.

183.    If the theft of Plaintiffs' family heirloom gold watch, leather chair, ottoman and dolly is not subject to a tort preempted by the Carmack Act, then it is actionable under the tort of conversion under Oregon, California and Florida law.

184.    The Plaintiffs' family heirloom gold watch was not in transit or being moved when their Sentry Valueguard 1330 Fireproof Combination Safe was pried open at the warehouse owned, operated and/or used by D United. Instead, D United and/or the unknown defendants had determined that any valuable contents of said safe would not continue in transit, but had reached their intended final destination.

185.    Unlike Plaintiffs' family heirloom gold watch, their Sentry Valueguard 1330 Fireproof Combination Safe did continue in transit and was delivered in damaged, ransacked condition with the door taped to it to Plaintiffs in California.

186.    Because said family heirloom gold watch was no longer in transit, this claim for conversion is not preempted by the Carmack Amendment.

187.    D United and/or its agents wrongfully assumed control and dominion over Plaintiffs' family heirloom gold watch.

188.    Plaintiff had the right to immediate possession of their family heirloom gold watch.

**COMPLAINT** - 37

189.    Plaintiff demanded the return of their family heirloom gold watch, but have no hope of retrieving it.

190.    As a result of their family heirloom gold watch having been tortiously converted, Plaintiff have experienced severe emotional distress which is still being experienced by Plaintiffs to this date.

## XII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against the defendants and for relief as follows:

(a) Under Count I Hymes v. King Direct Right of Action purusant to  49 USCS § 14706, Plaintiffs are entitled to a full refund of all monies they paid to the defendants in the combined amount of $5,178.00, less any quantum meruit compensation due to defendants for the productive, non-destructive services they provided, if any.

(b) Under Count II Carmack Amendment claim, an award of damages for loss and damage to their property in the amount of $17,553.00.

(c) Under Count III RICO claim, an award of damages for overcharges, loss and damage to their property in the treble amount $68,193.00;

(d) Under Count IV negligent hiring, an award of damages for loss and damage to their property in the amount of $22,731.00, plus $50,000 in emotional distress damages;

(e) Under Count V conversion, an award of $15,000 for their family heirloom watch, plus $50,000 in emotional distress damages, and $100,000 in punitive damages;

(f) Reasonable attorney's fees under 49 USCS § 14708(d) and 18 U.S.C. § 1964(c);

(g) The costs and expenses of this action; and

(h) All other relief available at law and equity.

COMPLAINT - 38

Plaintiffs demand trial by jury.

DATED: March 28, 2021

Respectfully submitted,

T.M. Guyer and Ayers & Friends, PC

BY: _____

THAD M. GUYER (OSB 821443)

Attorneys for Plaintiffs

T M GUYER and AYERS & FRIENDS, PC
116 Mistletoe Street, Medford, OR 97501
(206) 535-2395

## APPENDIX A:  SUMMARY OF DAMAGES

| | **Payments to Broker and Mover** | | | |
|---|---|---|---|---|
| **Date** | **Payee** | **Amount** | **Method of Payment** | **Comments** |
| | | | | |
| | *US Pro* | | | |
| 10-19-2020 | Us Pro | $778 | Bank draft | Demand made for bank info by US Pro. They designed & gave check #7257305 dating it 10-19-20 & cleared our bank 10-22-20 |
| 11-18-2020 | US Pro | $500 | Bank wire transfer | US Pro knew we put a stop-payment or froze our bank acct so demanded a wire transfer from another bank acct giving us wire instructions. |
| *TOTAL pd US Pro* | | $1,278 | | |
| 2-17-2021 | US Pro | -$300 | Refund given back after BBB complaint filed. | **US Pro having our bank info made a direct deposit w/notation: ACH Deposit US Pro Moving L - RFND 2/15** |
| FINAL TOTAL Pd US Pro | | $978 | | |
| | *D United* | | | |
| 11-26-2020 | D United | $1,500 | Cash | Demand made by D United HQ via driver's phone calls |
| 12-19-2020 | D United | $2,700 | Cash | Demand made by D United HQ via driver's phone text messages and document photos |
| *TOTAL pd D United* | | $4,200 | | |
| **TOTAL MOVING CHARGES PAID** | | $5,178 | | |
| | | | | |
| | **Lost Property Items and Values and Insurance Recovery** | | | |
| | | | | |
| | | | | |
| **Description of Never Delivered Items** | **Value** | **Payment by Homeowners Insurance** | **Last known location and date** | **Comments** |
| | | | | |
| Gold Antique Watch | $15,000 | $1,000 | D United Truck 11-26-2020 | Loss value increased in first claim amendment from $5k-$10k to |

**COMPLAINT - 40**

T M GUYER and AYERS & FRIENDS, PC
116 Mistletoe Street, Medford, OR 97501
(206) 535-2395

| | | | | heirloom value of $15,000 |
|---|---|---|---|---|
| Bicycle-24" | $330 | $330 | D United Truck 11-26-2020 | |
| Leather Chair | $140 | $140 | D United Warehouse | confirmed by Barbara text |
| Leather Ottoman | $40 | $40 | D United Warehouse | confirmed by Barbara text |
| Dolly 1 | $65 | $65 | D United Warehouse | confirmed by Barbara text |
| Dolly 2 | $112 | $112 | D United Truck 11-26-2020 | |
| 3-Step Folding Ladder | $93 | $93 | D United Truck 11-26-2020 | |
| 4-Step Folding Ladder | $145 | $145 | D United Truck 11-26-2020 | |
| Werner 16-Ft Aluminum Extension Ladder | $260 | $260 | D United Truck 11-26-2020 | |
| ***TOTALS* (for never delivered items)** | $16,185 | $2,185 | | |
| **Description of Items Delivered but Damaged** | **Value** | **Payment by Homeowners Insurance** | **Last known undamaged location and date** | **Comments** |
| Safe | $323 | $323 | D United truck 11-26-2020 | |
| Bicycle-26" | $300 | $300 | D United truck 11-26-2020 | |
| 5: 8x10 Broken Glass in pic frames | $65 | $0 | D United truck 11-25-2020 | submitted in Original Filing of My Move Claim |
| Antique Yellow French Pottery Bowl Broken | $340 | $0 | D United truck 11-25-2020 | submitted in Original Filing of My Move Claim |
| Franciscan USA HACIENDA YELLOW GOLD Vintage Dinner Plate 10.75" | $33 | $0 | D United truck 11-25-2020 | submitted in second email claim amendment to My Move Claim |
| Franciscan USA HACIENDA YELLOW GOLD Vintage Vegetable Bowl | $58 | $0 | D United truck 11-25-2020 | submitted in second email claim amendment to My Move Claim |
| Franciscan USA HACIENDA YELLOW GOLD Vintage Bowl | $28 | $0 | D United truck 11-25-2020 | submitted in second email claim amendment to My Move Claim |
| Vintage Milk Glass 2 Section Serving Dish with Acorns Pattern | $44 | $0 | D United truck 11-25-2020 | submitted in second email claim amendment to My Move Claim |
| 2 Vintage Crystal Wine Glasses | $33 | $0 | D United truck 11-25-2020 | submitted in second email claim |

T M GUYER and AYERS & FRIENDS, PC
116 Mistletoe Street, Medford, OR 97501
(206) 535-2395

| | | | | |
|---|---|---|---|---|
| | | | | amendment to My Move Claim |
| Art Vintage Handmade Pottery Coffee Mug | $38 | $0 | D United truck 11-25-2020 | submitted in second email claim amendment to My Move Claim |
| Vintage Pyrex 9x13 LasagnaBaking Casserole Dish | $33 | $0 | D United truck 11-25-2020 | submitted in second email claim amendment to My Move Claim |
| Starbucks Large Coffee Mug Cup | $34 | $0 | D United truck 11-25-2020 | submitted in second email claim amendment to My Move Claim |
| Vintage Souvenir Alaskan Jigger/Shot Glass collectible | $39 | $0 | D United truck 11-25-2020 | submitted in second email claim amendment to My Move Claim |
| ***TOTALS** (for damaged items)* | $1,368 | $623 | | |
| | | | | |
| **TOTAL LOSS VALUE AND INSURANCE PAID** (sum of undelivered and damaged items) | $17,553 | $2,808 | | |

**COMPLAINT** - 42

**T M GUYER and AYERS & FRIENDS, PC**
116 Mistletoe Street, Medford, OR 97501
(206) 535-2395